DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that granted summary judgment in favor of appellees and dismissed appellant's complaint alleging sex discrimination, sexual harassment, and intentional and reckless infliction of emotional distress in the workplace.
 {¶ 2} For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 3} Appellant sets forth the following assignments of error:
 {¶ 4} "A. The trial court erred when it held that Appellant had not established the presence of hostile work environment based on sex.
 {¶ 5} "B. The trial court erred when it held that Appellant had not produced evidence of sex-based discrimination."
 {¶ 6} The undisputed facts that are relevant to the issues raised on appeal are as follows. Appellant was hired as a funeral director/embalmer by appellee Eggleston-Meinert Funeral Home, Inc. ("Eggleston-Meinert") on February 22, 2000 and began working on February 28, 2000. Prior to being hired, appellant had completed her schooling at a college of mortuary science and had served an apprenticeship at a local funeral home. Appellant had taken her exams prior to accepting the job but had not received the results so was not yet licensed. Eggleston-Meinert employed three other full-time licensed funeral director/embalmers: appellees Terrance Breymaier and Michael Pirolli, and Larry Schaffer. At that time, Eggleston-Meinert operated two shifts and appellant was assigned to a shift with Larry Schaffer. Appellant became licensed on March 10, 2000, and her employment was terminated on April 25, 2000, eight weeks after she was hired.
 {¶ 7} On October 23, 2000, appellant filed a complaint against appellees. Appellant alleged in the first count of her complaint sex discrimination and harassment based on sex under Ohio law and in the second count intentional or reckless infliction of emotional harm. Appellant indicates, however, in her appellate brief that she is not pursuing the second count on appeal. In that part of her complaint relevant to this appeal, appellant alleged that during the time she was employed by Eggleston-Meinert, she was not allowed to perform the normal duties of a funeral director and embalmer which the male funeral directors and embalmers performed; the duties she performed were completed in a conscientious and exemplary manner; she was subject to a hostile environment due to her sex and was given menial jobs, questioned closely about her personal life, ostracized, subjected to false complaints of poor performance, and watched closely while she performed her job duties; the harassment was unwelcome and directed at her because of her sex; the harassment was sufficiently severe to affect the terms, conditions or privileges of her employment; and her employer knew or should have known of the harassment and failed to take corrective action.
 {¶ 8} Appellees filed timely answers and, on November 16, 2001, filed a motion for summary judgment. Appellees argued that appellant was a newly licensed funeral director/embalmer subject to the company's 90-day probationary period and under the same scrutiny as any other new employee in that position. Appellant responded that there were questions of material fact as to whether a sexually-based hostile work environment existed, whether she was treated differently because she was a female, and whether she suffered serious emotional distress. On March 5, 2002, the trial court granted summary judgment and dismissed the complaint. It is from that judgment that appellant brings her timely appeal.
 {¶ 9} Appellant's two assignments of error will be addressed together. Appellant asserts that she was subjected to sexual harassment through a hostile work environment and discriminated against because of being a female. She argues that appellees criticized her work unjustifiably; supervised her unnecessarily; did not permit her to regularly perform the more skilled tasks for which she had been trained, even after she received her funeral director/embalmer's license and required her to perform menial tasks that were not related to her training, such as cleaning the premises. She further argues that appellee Mike Pirolli, one of the other funeral directors, asked her personal questions on her first day of work and that some of the employees told sexually-oriented jokes in the office when appellant was present.
 {¶ 10} In reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 11} R.C. 4112.02(A) makes it an unlawful discriminatory practice for an employer, "* * * because of the * * * sex * * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 12} Further, the Supreme Court of Ohio has held that "A plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination `because of * * * sex' by proving either of two types of sexual harassment: (1) `quid pro quo' harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) `hostile environment' harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." Hampel v. FoodIngredients Specialties, Inc. (2000), 89 Ohio St.3d 169, paragraph one of the syllabus. It is the second type of harassment of which appellant complains in the case before us.
 {¶ 13} The Supreme Court in Hampel, supra, set forth the conditions which a plaintiff must show in order to establish a claim of hostile-environment sexual harassment, which are: "* * * (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate action."Hampel, paragraph two of the syllabus.
 {¶ 14} Appellant must first show that she was subjected to unwelcome harassment. Sexual harassment is defined by the federal EEOC regulations as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." Section 1604.11(a), Title 29, C.F.R. The Supreme Court of Ohio has held, however, that harassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff because of his or her sex. Hampel, supra, at 180.
 {¶ 15} This court has thoroughly reviewed the evidence that was before the trial court, which consisted of the parties' briefs; the affidavits of Dennis Pavley, president of Eggleston-Meinert, and Joseph Boes, a director's assistant; and the depositions of appellant, appellees and several other employees of Eggleston-Meinert. For the following reasons, it does not appear that appellant was the recipient of "unwelcome sexual advances, requests for sexual favors, or any other verbal or physical conduct of a sexual nature," or of abusive conduct directed at her because of her sex, such as that contemplated in Hampel.
 {¶ 16} Appellant testified during deposition that she was never "integrated into the group," that she was ostracized, set aside and accused of things she had not done. She stated that the men and women there were separated into two categories — female support staff and male funeral directors — and that she did not fit into either group.
 {¶ 17} Appellant also complained of Pavley's comment that if he did not have so many secretaries he might have some work for her to do. Appellant took that comment to imply that she should be doing secretarial work because she is a woman. Appellant further stated that co-worker Pirolli harassed her and treated her rudely and differently from the male funeral directors. She also testified that she was frustrated when Breymaier questioned and criticized her embalming technique one day. Appellant believed that Breymaier was treating her like a child, which upset her. She also referred to an incident in the embalming room when Pirolli stated that he was there to assist her, which she did not like because she believed she did not need any help and that she, in fact, was there to assist him. She stated that Pirolli's attitude toward her was condescending. Appellant also stated that when she and Pirolli went to lunch together on her first day of work, Pirolli made an inappropriate reference to her being very thin and then asked her if she had a boyfriend and whether the relationship was serious.
 {¶ 18} Appellant stated that she assumed once she received her license, approximately one month after she began working, she would be arranging and directing funerals and doing as many embalmings as the male directors. Appellant admitted that one day Pavley asked her to clean the chandeliers in the funeral home and said that she did not do it because she did not know how and was scheduled to leave in an hour. Appellant further stated that during one week when Pavley was on vacation and Breymaier was in charge, Breymaier harassed her by treating her differently from the other funeral directors and overlooking her. She testified that Breymaier would not look her in the eye, brushed her off, and would not take seriously anything she had to say.
 {¶ 19} Dennis Pavley testified during deposition that appellant was released within the 90-day probationary period due to a lack of professionalism, a poor work ethic, poor attitude, insubordination, and threatening harm to another employee. Pavley testified that he explained the 90-day probationary period to appellant during her interview and gave her an employee handbook which also explained the policy. In further support of his decision, Pavley described an incident wherein he was told that appellant behaved rudely at a meeting of funeral directors held at a local restaurant and left the meeting to go sit in the bar with friends; referred to the time appellant refused to clean the chandeliers as instructed; and stated that appellant complained on several occasions about having to perform certain tasks, and made it clear she did not like having to come back to work for evening visitations. Pavley testified that "the last straw" for him was when he learned that when appellant was told by one of the other funeral directors she should try to "kill Pirolli with kindness," she indicated she would have to bring in an AK-47 to do that. Pavley also stated that appellant did not like to be monitored or supervised, which was his practice with all new employees.
 {¶ 20} This court has reviewed the entire record of proceedings before the trial court. The record reveals that when appellant was hired by Eggleston-Meinert she was not yet licensed and therefore was limited by law as to what she could do in terms of directing funerals and embalming. It further reveals that the other funeral directors were significantly more experienced in all aspects of the job than was appellant. It is entirely reasonable that appellant would be supervised early on and would have to work her way into the various responsibilities and skilled tasks. Monitoring a new employee's performance and critiquing her do not amount to harassment. Further, none of the behavior of which appellant complains amounts to harassment, let alone harassment of a sexual nature, or is there evidence that appellant was treated differently from the other funeral directors due to her sex.
 {¶ 21} Upon consideration of the record of proceedings in the trial court and the law, this court finds that there exists no genuine issue of material fact and, when construing the evidence that was before the trial court most strongly in favor of appellant, reasonable minds can only conclude that appellant was not treated differently because she is a female, appellant was not subject to a hostile work environment or harassment based on her sex, and appellees are entitled to summary judgment as a matter of law. Accordingly, appellant's first and second assignments of error are not well-taken.
 {¶ 22} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.